IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

RECEIVED CLERK'S OFFICE

2009 JUN 30 A 11: 18

DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON, SC

| | | |
|---|---|---|
| John F. Brown, | ) | C. A. 2:08-3124-CWH-RSC |
| Plaintiff, | ) | |
| -versus- | ) | **REPORT AND RECOMMENDATION** |
| Thomas Supply Co., Inc., | ) | |
| Defendants. | ) | |

This employment discrimination case brought by an individual proceeding pro se and alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq., is before the undersigned United States Magistrate Judge for a report and recommendation on the defendant's motion for summary judgment filed on May 8, 2009. 28 U.S.C. § 636(b).

On September 11, 2008, the plaintiff, John F. Brown, an African-American, filed a verified complaint against his former employer, Thomas Supply Co., Inc., and alleged that he was paid less money than similarly situated white employees and that he was terminated because of his race. Brown seeks seven hundred twelve thousand dollars ($712,000.00). (Depo. Brown p. 58, l. 10 - 16).

The defendant filed a motion for summary judgment on May 8, 2009, along with several affidavits, exhibits, and the deposition testimony of the plaintiff. The plaintiff was provided a copy of

1

the defendant's summary judgment motion on May 12, 2009, and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975). Brown filed an opposition to the motion on June 15, 2009, along with an verified "Statement of Relevant Facts". Hence, it appears consideration of the motion is appropriate.

## SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court first must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. <u>Celotex Corp. v. Cattrett</u>, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. <u>Perini Corp. v. Perini Constr., Inc.</u>, 915 F.2d 121, 123-23 (4th Cir. 1990). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute

exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. CenTra, Inc., 947 F.2d 115, 119 (4th Cir. 1991); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

Speculation is not enough to withstand a motion for summary judgment. Ash v. United Parcel Service, Inc., 800 F.2d 409, 411-12 (4th Cir. 1986). Indeed, the court should draw reasonable inferences on behalf of the non-moving party, but it must not slip into "sheer speculation." The court may not move beyond inference and into the realm of mere conjecture. Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 242 (4th Cir. 1982). Such bald, unsupported, and conclusory allegations do not constitute evidence and therefore do not create triable issues of fact. Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). A plaintiff's beliefs, just like conclusory allegations, speculation, and conjecture are simply insufficient to defeat a properly supported motion for summary judgment. See, Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1995).

In summary, the plaintiff must present admissible evidence which raises a material and genuine factual dispute. "The mere existence of a scintilla of evidence in support of plaintiff's

position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

## APPLICABLE LAW

Title VII makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... race... ." 42 U.S.C. § 2000e-2(a)(1).

A plaintiff can prove defendant's motive to discriminate by two methods. First, the plaintiff may meet this burden under the ordinary standards of proof by direct evidence relevant to and sufficiently probative of the issue. Direct evidence is "[e]vidence, which if believed, proves existence of fact in issue without inference or presumption." Black's Law Dictionary, 460 (6th Ed.1990). Direct evidence is evidence that, by itself, proves the discrimination. See, Williams v. General Motors Corp., 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S. 943, 102 S.Ct. 1439 (1982). This is in contrast to circumstantial evidence which is evidence from which discrimination may be inferred.

It is undisputed that Brown has no direct evidence. Therefore he must resort to the judicially created burden

4

shifting scheme established in <u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) and <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981). <u>EEO v. Clay Printing Company</u>, 955 F.2d 936 (4th Cir. 1992). The United States Supreme Court articulated a three-part analysis for use in discrimination claims in <u>McDonnell Douglas</u>. To establish a prima facie case of discriminatory termination under Title VII, a plaintiff must show that: (1) he belongs to a protected class; (2) he was terminated; (3) at the time of the termination, he was performing at a level that met legitimate job expectations; and (4) he was replaced with a similarly situated applicant outside the plaintiff's protected class. <u>See</u>, <u>King v. Rumsfeld</u>, 328 F.3d 145, 149 (4th Cir. 2003).

To establish a *prima facie* claim of wage disparity under Title VII, Plaintiff must show (1) he is a member of a protected class; (2) he was paid less than an employee outside the class; and (3) the higher paid employee was performing a substantially similar job. <u>Brinkley-Obu v. Hughes Training, Inc.</u>, 36 F.3d 336 (4th Cir. 1994)

Once a *prima facie* case has been established, a rebuttable presumption is created that the employer unlawfully discriminated against the plaintiff and the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. If the employer articulates a legitimate,

non-discriminatory reason for its actions, the burden is then on the plaintiff to come forward with evidence that the employer's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the employer were really based on illegal racial animus. <u>McDonnell Douglas</u>, 411 U.S. at 802-805; <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 252-256.

Despite these shifting burdens of production, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 252-253; <u>see</u> <u>also</u>, <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507, 113 S.Ct. 2742 (1993).

If an employer uses unwise criteria in making personnel decisions, that does not amount to illegal discrimination. <u>See</u>, <u>Jiminez v. Mary Washington College</u>, 57 F.3d 369, 383 (4th Cir. 1995) ("The crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment."). Liability can attach only for decisions motivated by illegal racial animus. In the end, the plaintiff in a disparate treatment case such as this must prove that "but for" his race, he would not have been subjected to an adverse employment action. <u>Holmes v. Bevilacaua</u>, 794 F.2d 142 (4th Cir. 1986).

## **FACTS**

The facts, either undisputed or as shown by the plaintiff as the non-moving party, with all reasonable inferences drawn in favor of the plaintiff, to the extent supported by the record, are as follow.

In July 2006, Brown, an African-American, was hired to work in the lumberyard of the defendant's store by the manager, James Dozier, who is white. Brown's job duties included, among other things, using a forklift to pull pieces of lumber, count them, band them, and assist with loading them onto delivery trucks. (Aff. Dozier ¶ 3). Brown's job duties also included unloading supplies off incoming delivery trucks. Id. The store's Lumberyard Supervisor was Corey Rush, an African-American. (Aff. Rush ¶ 2).

Thomas Supply hired Brown at an hourly wage of $10.50 per hour, which is on the high end of the store manager's authorized wage range for a lumberyard worker. (Aff. Dozier ¶ 4). Dozier told Brown that he would be reviewed after ninety (90) days and would be given a raise. According to both Brown and Dozier, the wages were on the high end for a lumberyard worker because Brown held a commercial drivers license (CDL). (Depo. Brown p. 14, l. 1-16)(Aff. Dozier ¶ 4). Dozier believed Brown's CDL could benefit the store when the store experienced a driver shortage and needed Brown to drive the store's delivery truck. (Aff.

Dozier ¶ 5). Dozier did not review Brown's performance after he had worked for ninety (90) days and did not give him a raise.

Soon after Brown began working, Dozier assigned him to drive the residential truck and make a delivery to a residence. (Aff. Dozier ¶ 7). The residence had a hard soil surface in its front and a sandy surface in the back. Id. The workers at the site told Brown to put the items to be delivered in the back of the residence. Brown complied, drove into the sand at the rear of the residence and got stuck in the sand. Id.

While uncommon, stuck delivery trucks are not unheard of in Thomas Supply's business. Id. Dozier expects drivers whose delivery trucks become stuck to take what he considered the reasonable action of calling the store for help because, in most cases, another Thomas Supply truck can pull out the stuck truck. Id.

Brown called the store and spoke to an employee named Joe who told him to stay at the site, and that he would send help. (Brown statement p. 1). Another employee, Bruce Taylor arrived in his own truck and rocked Brown's truck back and forth in an effort to free it. However, the attempt wrecked the truck's transmission. (Brown's statement p. 1). As a result, Thomas Supply had to hire a wrecker to pull out the truck and pay for transmission repairs. Aff. Dozier ¶ 7.

Dozier has been the store's manager since 1978 and he cannot recall another instance when he called a wrecker to dislodge a stuck truck. Id. Dozier was not told that Brown did call the store or that Bruce Taylor rocked the truck back and forth and caused the transmission to fail. Id.

In Dozier's judgment, Brown handled this assignment poorly and Dozier decided Brown should stay in the lumberyard and not drive the store's delivery trucks. Id. Brown believes that Dozier made the decision because of race based animus.

Brown also believes that a white co-worker, Tabitha Sturkie, was prejudiced against him because of his race. Sturkie was not Brown's supervisor. According to Brown, Sturkie cursed at him when he dropped a board of lumber. (Compl., p. 5). Brown deposed that he never heard Sturkie use racial epithets and that he did not know if Sturkie directed curse words toward other co-workers. (Depo. Brown p. 35, l. 2 - 12). According to Dozier, Sturkie was a hard-working employee who worked with men in a lumberyard and could use "rough" language. (Aff. Dozier ¶ 4). Neither Dozier nor Rush, Brown's supervisor, ever heard Sturkie use racial epithets. (Aff. Dozier ¶ 8); (Aff. Rush ¶ 4).

In another incident, Brown was standing in a small office one morning warming his gloves near a heater when Sturkie kicked in a door which "came about 8 inches to a foot from hitting me." Sturkie did not apologize or even say "good morning." (Compl. p.

6). Brown provided inconsistent testimony about whether he believed Sturkie knew he was on the other side of the door. "I'm pretty sure she saw me." (Depo. Brown p. 45, l. 12 -13) "I'm 110 percent she knew I was in the office." (Depo. Brown p. 47, l. 3). "You don't know where anybody's at once you kick the door." (Depo. Brown p. 47, l. 21 - 22). According to Brown, Dozier called Sturkie into his office to discuss this incident, but did not call Brown into the office. (Compl. p. 7). According to Dozier, Sturkie warned Dozier that Brown might complain about the incident. (Aff. Dozier ¶ 8). Sturkie told Dozier she kicked in the door because her hands were full and she did not know that Brown was inside the office. Id.

Brown did complain to Dozier about the incident and Dozier affied that he told both Brown and Sturkie they needed to "work things out" and that they both were acting childish. Id. Brown claims that Dozier told him that he should have "cursed her out and tell her about herself." (Compl. p. 6).

Brown also complains that Sturkie, "will make sure that I'm up there helping" when trucks arrive to deliver mill products. (Compl. p. 7-8). Sturkie was the only employee in the mill and could not unload heavy products, e.g. doors, by herself and needed help from the lumberyard workers. (Aff. Dozier ¶ 9). Brown was not the only lumberyard worker asked to help with mill deliveries. Id.

In late April 2007, the store experienced several instances of misfilled lumber orders, e.g. wrong number, wrong length, wrong type. (Aff. Dozier ¶ 10). Loading misfilled orders results in the delivery truck returning to the store, unloading the incorrect order, loading the correct order, and re-delivering the correct order. Id. To improve quality assurance, Dozier ordered Rush to instruct all lumberyard employees to double-count pulled orders before banding them and Rush so instructed his men including Brown. Id.; (Aff. Rush ¶ 5).

On May 1, 2007, the day after the announcement, Brown "was pulling a order when Corey [Rush] came and told me I had got the wrong size lumber so I went and corrected it. James [Dozier] was standing in the door watching me like a hawk." (Brown statement p. 8).

Dozier then told Rush to send Brown home for the day pending an employment decision. (Dozier aff. ¶ 11). The next day, Dozier and Rush discussed what they perceived as Brown's insubordination, poor work performance, and generally poor attitude. (Aff. Dozier ¶ 12; Aff. Rush ¶ 7). Dozier decided to terminate Brown and instructed Rush to inform Brown of his decision. (Aff. Dozier ¶ 12; Aff. Rush ¶ 7). Dozier never spoke personally to Brown to inform him that he was fired. Brown believes that illegal discrimination against African-Americans is the reason Dozier decided to terminate him and not contact him

personally. Brown acknowledges Dozier is the same person who decided to hire him in July 2006 and who decided to fire him in May 2007. (Depo. Brown p. 21, l. 19 - 23).

## DISCUSSION

A review of the record and relevant case law reveals that the defendant's summary judgment motion should be granted and this matter ended.

First, Brown has failed to establish a prima facie case of wage discrimination. Brown deposed,

> Q. Are you aware of any non-supervisor, white, lumber yard employees who earned more per hour than you?
>
> A. I don't know, because the two guys that came in when I was there, I don't know if they quit or got terminated or what.
>
> Q. So is your answer you don't know?
>
> A. I don't know.

(Depo. Brown p. 27, l. 10 - 16).

Brown's failure to establish that any similarly situated white employee was paid more than he was paid is fatal to this claim. Therefore, it appears that the defendant is entitled to judgment as a matter of law.

Second, Brown's discharge claim fails as he has not established the third prong of his *prima facie* case, that at the time of his termination, he was performing his job at a level which met his employer's reasonable expectations. Specifically,

12

Brown failed to double-count a lumber order before banding it. Thomas Supply could legitimately expect that Brown would double-count lumber before banding it as he was instructed by his supervisor just one day earlier. Without sufficient evidence to establish the third element of his *prima facie* case, Brown's claim of discriminatory discharge fails as a matter of law. Warch v. Ohio Cas. Ins. Co., 435 F.3d 510 (4th Cir. 2006) (district court did not err in considering employee's job performance at the *prima facie* stage); Bagir v. Principi, 434 F.3d 733, 744 (4th Cir. 2006)("[The plaintiff's] Title VII illegal discharge claim fails for lack of evidence to establish the third element of his *prima facie* case, that he was performing his job duties at a level that met the [employer's] legitimate expectations."); Mahomes v. Potter, 590 F. Supp.2d 775, 794 (D.S.C. 2008); Holland v. Washington Homes, Inc., 487 F.3d 208, 220 (4th Cir. 2007)("Title VII endeavors to eliminate workplace discrimination, but the statute was not designed to strip employers of discretion when making legitimate, necessary personnel decisions.").

Brown claims he was meeting the defendant's job expectations, but has provided little evidence beyond his own opinion. An employee's "naked opinion" of his performance is not enough to establish a *prima facie* case of discrimination. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003); Evans v.

13

Technologies Apps. & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996). "It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996).

In addition to Brown's failure to demonstrate a *prima facie* case of racial discrimination, Thomas Supply has also offered a legitimate non-discriminatory reason for the termination which Brown has not rebutted. The defendant's decision maker, James Dozier, affied that "Brown's refusal to follow simple instructions, poor work attitude, and poor work performance" were responsible for his termination decision. This stated reason is not only legitimate and race-neutral but it is also entitled to a strong inference that it is not pretextual because Dozier was the person who both hired and fired Brown within a time span of less than ten months. Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991). The Proud court noted, "One is quickly drawn to the realization that '[c]laims that employer animus exists in termination but not in hiring seem irrational.' From the standpoint of the putative discriminator, '[i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.'" Citing Donohue & Siegelman, The Changing Nature of Employment Discrimination Litigation, 43 Stan.L.Rev. 983, 1017 (1991). Instead a strong

14

presumption exists that the reasons for termination were not mere pretext for race discrimination. Further, the early resolution of the question of discrimination vel nom "need not be derailed by strict fealty to proof schemes." Proud at 798.

Brown offers only his own opinion that he was fired because he is an African-American. That is not enough to defeat a properly supported motion for summary judgment as here because Brown's beliefs do not constitute evidence and therefore do not create triable issues of fact. Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987); see also, Ross v. Communications Satellite Corp., 759 F.2d 355,364 (4th Cir. 1995). The defendant is entitled to summary judgment.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendant's motion for summary judgment be granted.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

June 29, 2009

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within **ten (10) days** of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).